UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES C. SUNG, MD, a married man,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MISSION VALLEY RENEWABLE ENERGY, LLC, a Delaware limited liability company doing business in the State of Washington; et al.,<br><br>　　　　　　Defendants. | NO:  CV-11-5163-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FDIC'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on a motion for summary judgment brought by Defendant Federal Deposit Insurance Corporation ("FDIC") as Receiver for the Bank of Whitman.  ECF No. 43.  The Court heard oral argument on the motion.  Maris Baltins appeared for the plaintiff, Dr. Charles C. Sung. Kevin Curtis and David Gardner appeared on behalf of the FDIC.  The Court has reviewed the briefing, supporting exhibits, the file, and is fully informed.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FDIC'S MOTION FOR SUMMARY JUDGMENT~ 1

# BACKGROUND

Dr. Sung filed a complaint in Benton County Superior Court on October 27, 2010, alleging state law claims arising from a series of investments he made in a company named Mission Valley Renewable Energy, LLC ("MVRE"). Dr. Sung alleges that William McKay, a loan officer for the Bank of Whitman, made numerous material misrepresentations and omissions concerning MVRE in the process of soliciting Dr. Sung's investments. Allegedly relying on Mr. McKay's advice and representations, Dr. Sung made two investments in MVRE of $100,000 each in the form of convertible promissory notes. When the investments failed, Dr. Sung brought suit against MVRE, the Bank of Whitman, and Mr. McKay.

Dr. Sung's complaint states various causes of action against the Bank of Whitman under the Washington State Securities Act ("WSSA"), RCW 21.20 *et seq.*, and under tort theories of respondeat superior, failure to supervise, negligent misrepresentation, breach of fiduciary duty, and negligence. ECF No. 2, at 21-26. The Bank of Whitman failed during the pendency of Dr. Sung's action and the FDIC was appointed as Receiver. The FDIC substituted for the Bank of Whitman as the real party in interest and removed the action to federal court pursuant to 12 U.S.C. § 1819 and 28 U.S.C. § 1331.

The FDIC now seeks summary judgment on Dr. Sung's underlying causes of action against the Bank of Whitman.

## ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). A "material" fact is one that is relevant to an element of a claim or defense, and whose existence might affect the outcome of the suit. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir 1987). Thus, the materiality of a fact is determined by the substantive law governing the claim or defense. *Id.* The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Id.* at 324 (internal quotations omitted). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*,

929 F.2d 1404, 1409 (9th Cir. 1991).  In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 631-32.

The FDIC seeks summary judgment on all claims that Dr. Sung asserts against the Bank of Whitman.  These include causes of action brought under the WSSA and causes of action brought under theories of respondeat superior, negligent supervision, negligent misrepresentation, breach of fiduciary duty, and negligence.  The Court need not consider Dr. Sung's claim for negligence separately because Dr. Sung informed the Court at oral argument that his negligence claim is bound up in the rest of his claims.  All the other claims Dr. Sung pressed against the Bank of Whitman are examined in turn below.

**A. The Washington State Securities Act**

The Washington State Securities Act, RCW 21.20.010, states:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
>
> (1) To employ any device, scheme, or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

1   Dr. Sung asserts claims against the Bank of Whitman under subsections (1), (2),
2   and (3) of this statute. ECF No. 2, at 21-22.

3   Under the WSSA, there are two avenues through which the Bank of Whitman could be held liable for a violation of RCW 21.20.010: (1) if the Bank of Whitman was a "seller" of securities under RCW 21.20.430(1); or (2) if the Bank of Whitman is liable as a "control person" under RCW 21.20.430(3). Dr. Sung does not contend that the Bank was a seller of securities and instead argues only that the Bank was a control person under the statute.

4   RCW 21.20.430(3) provides that any person "who directly or indirectly controls a seller. . . liable under [RCW 21.20.430(1)] . . . is also liable jointly and severally with and to the same extent as the seller." The statute further provides that a defendant may avoid control person liability if they "sustain[] the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." RCW 21.20.430(3). The FDIC contends that the Bank of Whitman was not a control person under this statute and that even if the Bank were a control person, liability is excused under the statute because the Bank did not know and could not reasonably have known of the misrepresentations allegedly made by Mr. McKay.

1  Washington courts apply a two prong test in determining control person
2  liability under the WSSA.  To establish control person liability, the plaintiff must
3  show that the defendant (1) "actually participated in (*i.e.*, exercised control over)
4  the operations of the corporation in general"; and (2) "possessed the power to
5  control the specific transaction or activity upon which the primary violation is
6  predicated."  *Hines v. Data Line Sys., Inc.*, 114 Wn. 2d 127, 136-37 (1990)
7  (quoting *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985)) (internal quotation
8  omitted); *Herrington v. Hawthorne*, 111 Wn. App. 824, 835-36 (2000).  The FDIC
9  argues that Dr. Sung cannot establish either prong of the test for control person
10 liability.

11  The FDIC contends that the Bank of Whitman did not have controlling
12 authority over MVRE or any involvement in MVRE whatsoever; that the Bank did
13 not possess the power to control Mr. McKay in his alleged capacity as a seller of
14 MVRE securities; and that the Bank did not participate in the sales transaction.  Dr.
15 Sung does not dispute that the Bank did not have controlling authority over MVRE
16 and that the Bank did not participate in the sales transaction.  Rather, Dr. Sung

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
FDIC'S MOTION FOR SUMMARY JUDGMENT~ 6

contends that the Bank had the power to control Mr. McKay's actions as a seller of securities under the WSSA.[1]

The FDIC argues that the Bank did not have the power to control Mr. McKay's actions with regard to the sale of MVRE securities. In support of this argument the FDIC has established that the Bank did not sell securities and had never sold securities in its entire history; that Mr. McKay was not authorized to sell securities within the scope of his work as a loan officer for the Bank; and that Mr. McKay was in fact expressly forbidden by the Bank of Whitman from engaging in the sale of securities. ECF No. 3, at 204-05. The FDIC submitted evidence that every employee of the Bank, including Mr. McKay, was advised of the Bank's policies prohibiting the sale of securities and signed an acknowledgment of those policies each year. ECF No. 3, at 205.

Dr. Sung does not dispute the FDIC's evidence that the Bank did not sell securities and that Mr. McKay was expressly forbidden from engaging in the sale of securities as an employee of the Bank. Instead, Dr. Sung argues that the Bank could control Mr. McKay's activities because 1) Mr. McKay was an employee of

---

[1] The Court previously ruled that there exists a genuine issue of material fact as to Mr. McKay's status as a "seller" of securities under the WSSA. ECF No. 118, at 5-7.

the Bank; 2) Mr. McKay conducted transactions related to MVRE at the Bank offices and use his e-mail address with the Bank; and 3) those activities took place on company time. ECF No. 63, at 2-5, 8-10, 12-15.

However, the FDIC responds that these facts are insufficient to establish control person liability under the WSSA because the plaintiff also must establish that the defendant "possessed the power to control *the specific transaction or activity upon which the primary violation is predicated*." *E.g.*, *Hines*, 114 Wn. 2d at 136 (emphasis added). The FDIC argues that the Bank's general power to control Mr. McKay's actions as part of the employer/employee relationship does not establish that the Bank had the power to control Mr. McKay's actions in selling securities, when the sale of securities was not a facet of Mr. McKay's employment and was in fact expressly forbidden by Bank policy.

The Court concludes that Dr. Sung has not met his burden of setting out specific facts to show that a genuine issue of material fact exists as to whether control person liability could attach to the Bank under the WSSA. *See Celotex*, 477 U.S. at 324. The FDIC established that the sale of securities was not part of the Bank's business or Mr. McKay's duties as an employee of the Bank, and that Mr. McKay was in fact expressly forbidden to sell securities as part of his employment with the Bank. The burden then shifted to Dr. Sung to establish a genuine issue of material fact on whether the Bank may be subject to control

person liability. Dr. Sung has not submitted any evidence to support that the Bank "possessed the power to control" Mr. McKay's alleged sale of MVRE promissory notes. Mr. McKay's status as an employee of the Bank is not, in and of itself, material as to whether the Bank could control his actions in the specific transactions at issue. Therefore summary judgment in favor the FDIC is appropriate on this issue.

Having determined that the Bank is not subject to liability for any alleged violation of the WSSA under RCW 21.20.430, the Court need not consider the FDIC's alternative argument that it did not know nor could have known of the alleged misrepresentations that form the basis of Dr. Sung's suit.

**B. Respondeat Superior**

Dr. Sung seeks to hold the Bank of Whitman responsible for the actions of its loan officer, Mr. McKay, under the tort theory of respondeat superior. The FDIC contends that the Bank is not vicariously liable for Mr. McKay's actions because he acted outside the course and scope of his employment at all times relevant to this suit.

Under Washington law, a master is liable for the acts of a servant committed within the scope or course of the servant's employment. *E.g. Bratton v. Calkins*, 73 Wn. App. 492, 498 (1994) (citing *Dickinson v. Edwards*, 105 Wn. 2d 457, 466 (1986)). But where the servant "steps aside from the master's business in order to

effect some purpose of his own, the master is not liable." *Id.* (quoting *Kuehn v. White*, 25 Wn. App. 274, 277 (1979)). The test of whether an employee acted in the scope or course of employment is whether the employee was engaged in the performance of duties provided for in his employment contract, was acting by specific direction of his employer, or "whether he was engaged at the time in the furtherance of the employer's interest." *Dickinson*, 105 Wn. 2d at 467.

An employer may defeat a claim of vicarious liability by showing that the employee's conduct was "(1) intentional or criminal and (2) outside the scope of employment." *Robel v. Roundup Corp.*, 148 Wn. 2d 35, 53 (2002). An employee's conduct is outside the scope of employment if it is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (quoting Restatement (Second) of Agency § 228(2)). Whether an employee is acting within the scope or course of employment is typically a question for the finder of fact. *See Strachan v. Kitsap County*, 27 Wn. App. 271, 274-75 (1980)).

The FDIC asserts that Mr. McKay was not acting within the course and scope of his employment in allegedly selling MVRE securities because Mr. McKay's duties at the bank were as a loan officer and not in the sale of securities. The FDIC further argues that the Bank of Whitman did not sell securities; that Mr. McKay was specifically prohibited from selling securities or providing investment

1  advice; and that the Bank of Whitman did not profit from the sale of MVRE
2  securities in any way.  ECF No. 3, at 204-05.

3  Dr. Sung contends that Mr. McKay was acting, at least in part, in furtherance
4  of the Bank's interests when engaged in the sale of MVRE securities.  Dr. Sung
5  points out that one of Mr. McKay's duties in his employment with the Bank was to
6  bring in and foster customer relationships.  ECF No. 62, at 235, 241-42.  Dr. Sung
7  additionally has shown that MVRE's managers and Dr. Sung all were customers of
8  the Bank.  ECF No. 62 at 47; ECF No. 63, at 2.  In addition, Dr. Sung would visit
9  Mr. McKay's office at the Bank whenever the two of them discussed MVRE or
10 signed documents related to the sale of the MVRE securities.  ECF No. 63, at 2-5,
11 8-10, 12-15.  Based on these facts, Dr. Sung argues that Mr. McKay was fostering
12 relationships with the Bank's customers at the same time that he was allegedly
13 selling securities in MVRE.  Therefore, in Dr. Sung's view, Mr. McKay's actions
14 served both his own interests and the interests of the Bank.

15 Dr. Sung relies on *Rahman v. State of Washington*, 170 Wn. 2d 810 (2011),
16 *superseded on other grounds by statute*, S.H.B. 1719, 2011 Wash. Sess. Laws, Ch.
17 82, in support of his argument.  In *Rahman*, the Washington Supreme Court held
18 that an employer could be held liable under the doctrine of respondeat superior for
19 injuries sustained by an unauthorized passenger in an automobile driven by an
20 employee for the purposes of the employer's business.  *Id.*  The employer argued

that the employee's unauthorized act of allowing the passenger to ride along in the vehicle was done for the employee's own purposes and thus fell outside the scope of respondeat superior. *Id.* at 816.

The Court rejected this argument and instead found that the employee had combined his own business with his employer's business. *Id.* at 816-17. The Court reasoned:

> The general trend of authority is in the direction of holding that, where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business the employee was actually engaged in when a third person was injured, and the employer will be held responsible unless it clearly appears that the employee could not have been directly or indirectly serving his employer; also the fact that the predominant motive of the employee is to benefit himself does not prevent the act from being within the course or scope of employment, and if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability if the act otherwise is within the service.

*Id.* at 817 (quoting *McNew v. Puget Sound Pulp & Timber Co.*, 37 Wn. 2d 495, 497-98 (1950)).

The issue is a close one in this case. From the record it appears that Mr. McKay was primarily motivated by his own purpose and that any furtherance of the Bank's interests was incidental at best. Nonetheless the law is clear that even when the employee's "predominant motive" is to benefit himself, liability may still attach to the employer if the employee is motivated to serve the employer's business "to any appreciable extent." *See id.* Sufficient evidence has been

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FDIC'S MOTION FOR SUMMARY JUDGMENT~ 12

presented that would allow a reasonable finder of fact to conclude that Mr. McKay was acting in furtherance of the Bank's interests to some extent. Drawing all reasonable inferences in the light most favorable to the non-moving party, the Court finds that a genuine issue of material fact exists as to whether the Bank may be held liable under the doctrine of respondeat superior.

### C. Negligent supervision

Negligent supervision "creates a limited duty to control an employee for the protection of a third person, even where the employee is acting outside the scope of employment." *Niece v. Elmview Group Home*, 131 Wn. 2d 39, 51 (1997). Liability attaches under this theory only where the employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others. *Id.* at 48-49.

The FDIC contends that Dr. Sung cannot prevail under a theory of negligent supervision because Mr. McKay was not acting within the course and scope of his employment when engaging in his MVRE dealings. But a negligent supervision claim may arise precisely when an employee acts outside the scope of employment. As the Washington Supreme Court explained in *Niece*,

> Even where an employee is acting outside the scope of employment, the relationship between employer and employee gives rise to a limited duty, owed by an employer to foreseeable victims, to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others.

131 Wn. 2d at 48.

The FDIC additionally argued in its reply brief that Dr. Sung cannot press contradictory claims that Mr. McKay was acting within the course and scope of his employment for the purposes of respondeat superior but was not acting within the scope and course of his employment with respect to negligent supervision. The Court concludes that although Dr. Sung may not prevail on both claims at trial, he may press alternative theories of liability at the summary judgment stage. *See* Fed. R. Civ. P. 8(d). Therefore, the FDIC is not entitled to summary judgment on this claim.

**D. Negligent misrepresentation**

To succeed on a claim of negligent misrepresentation, a plaintiff must prove by "clear, cogent, and convincing evidence" that he or she "justifiably relied on the information that the defendant negligently supplied." *Lawyers Title Ins. Corp. v. Baik*, 147 Wn. 2d 536, 545 (2002) (citing *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn. 2d 820, 826 (1998)). A plaintiff pressing a negligent misrepresentation claim must prove six elements:

> (1) That [the defendant] supplied information for the guidance of others in their business transactions that was false; and
>
> (2) That [the defendant] knew or should have known that the information was supplied to guide [the plaintiff] in business transactions; and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FDIC'S MOTION FOR SUMMARY JUDGMENT~ 14

(3) That [the defendant] was negligent in obtaining or communicating false information; and

(4) That [the plaintiff] relied on the false information supplied by [the defendant]; and

(5) That [the plaintiff's] reliance on the false information supplied by [the defendant] was justified (that is, that reliance was reasonable under the surrounding circumstances); and

(6) That the false information was the proximate cause of damages to [the plaintiff]."

*Id.* The FDIC contends that the fifth element, reasonable reliance, is lacking in Dr. Sung's case.

The issue of reasonable reliance was addressed by the Court in its Order Denying Mr. McKay's Motion for Summary Judgment, ECF No. 118, at 10-17. The Court concluded in that Order that a genuine issue of material fact existed as to whether Dr. Sung could have reasonably relied on the alleged representations of the Bank's loan officer, Mr. McKay. The FDIC has presented the same argument here that Mr. McKay advanced in his motion for summary judgment: that Dr. Sung was an experienced investor who signed documents indicating that he could withstand the loss of his entire investment in MVRE. The Court rejects those arguments for summary judgment for the same reasons set forth in its prior Order denying Mr. McKay's motion for summary judgment.

### E. Breach of fiduciary duty

Under Washington law, a bank generally does not owe a fiduciary duty to its depositors. *Annechino v. Worthy*, 162 Wn. App. 138, 143 (2011) (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wn. App. 456, 458-59 (1982)). However, "special circumstances may establish a quasi-fiduciary relationship in fact where one would not normally arise in law." *Id.* Such a relationship may arise in situations where one party lacks business expertise and a friendship between the contracting parties caused reliance, or where one party possesses superior knowledge and assumes the role of an adviser. *Id.* at 143-44 (quoting *Liebergesell v. Evans*, 93 Wn. 2d 881, 891 (1980)). Other relevant factors include whether the defendant took on any extra service for the borrower, received any greater economic benefit than usual from the transaction, sought out the plaintiff's business, or exercised control over the transaction. *See id.* at 144-46 (discussing cases). Whether such a fiduciary responsibility exists in a given case depends on the development of factual proof. *Liebergesell*, 93 Wn. 2d at 891.

The FDIC contends that the Bank owed no fiduciary duty to Dr. Sung because the Bank was not a party to the MVRE transactions, the Bank did not take on any "extra service" beyond that of a bank to a depositor, the Bank received no economic benefit from Dr. Sung's purchase of the MVRE securities, and the Bank did not give Dr. Sung any advice regarding MVRE.

For his part, Dr. Sung notes that his relationship with Mr. McKay initially began through his relationship with the Bank as a depositor; that Dr. Sung came to trust Mr. McKay through his dealings with the Bank; and that Mr. McKay had told Dr. Sung that the Bank was financially involved in MVRE.  ECF No. 63, at 2-6, 8-10, 12-13.  Dr. Sung additionally notes that the Bank knew of Mr. McKay's personal financial involvement in MVRE and may have suspected that Mr. McKay was soliciting customer involvements in MVRE.  ECF No. 62, at 184-89, 191-206, 212-27.  At one point Bank officials confronted Mr. McKay about whether he was selling securities to Bank customers and Mr. McKay denied that he was.  ECF No. 62, at 200-14, 218-21.  Despite this information the Bank never contacted Dr. Sung about MVRE.  ECF No. 63, at 16.

Dr. Sung has submitted sufficient evidence to raise a genuine issue of material fact as to whether Mr. McKay had created a fiduciary relationship with Dr. Sung.  Given the Bank's knowledge of Mr. McKay's involvement in MVRE and its apparent suspicion that he may have solicited investments in MVRE from Bank customers, a finder of fact could determine that the Bank had a fiduciary relationship in fact with Dr. Sung.  Therefore summary judgment is not appropriate on this claim.

/ / /

/ / /

CONCLUSION

The FDIC is entitled to summary judgment on Dr. Sung's claims brought under the WSSA because the Bank is not subject to liability under the Act. However, the existence of genuine issues of material fact precludes summary judgment on Dr. Sung's claims for respondeat superior, negligent supervision, negligent misrepresentation, and breach of fiduciary duty.

Accordingly, **IT IS HEREBY ORDERED** that the FDIC's For Summary Judgment, **ECF No. 43**, is **GRANTED IN PART** and **DENIED IN PART** consistent with this Order.

The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 22nd day of March 2013.

                                  *s/ Rosanna Malouf Peterson*
                                ROSANNA MALOUF PETERSON
                               Chief United States District Court Judge